That's appeal number 231792, Tina Gerlach v. the Attorney General of Indiana, Todd Rokita. And we'll begin, Mr. Heffner, good afternoon. Good afternoon. May it please the Court. I'd like to focus on the main reason this case was filed. That is, Ms. Gerlach and hopefully a class of similarly situated people would like to have their Fifth Amendment rights vindicated. Mr. Heffner, before you go too far down the Fifth Amendment route, I just want to clarify. Do you agree that your claim for prospective relief is now moot? No. You don't agree, because I know the district court decided it based on the change in policy. There's been a legislative change since then. You seem to agree in your blue brief that it was, but— I think we say it might be, and that was before the time the statute was passed, since the defendants have filed in their reply brief an affidavit with some stated percentages that the state is going to pay. However, we don't think the appellate court is an appropriate place for the appellants to figure out whether or not the statute actually pays just compensation as required by the Fifth Amendment. We don't know. We haven't had a chance to even to pose someone or ask anyone questions about that affidavit. But here's my concern about that very point. The way this case came to us, this was an attack based on, I suppose, the policy. There now is the legislation, but the legislation does take the position that interest will be paid. So it seems to me that closes the book on your original complaint, and now you seem to have perhaps shifted to a pre-enforcement challenge to the new legislation. But we have no record for that. We have no development of that issue at all in the district court. So it seems to me it's really a different piece of litigation. It very well could be, Your Honor, on the new statute, like I said. And so this case for the prospect of relief may well be moved without in any way saying that some other case you may bring that focuses on the new statute. Certainly. Certainly that could be the case. The point is, though, Ms. Gerlach had two pieces of property. She's made a claim on one and been paid, and so that's the retrospective claim. She also has another piece of property in the unclaimed property system. Does the record show if this $100.93 was the original amount? In other words, is that the no interest level of payment? Yes, Your Honor. It's a funny number, so I just wondered. And she hasn't made—we don't have any idea what the other claim that she might decide to make someday. She's got 25 years, I guess, to do it. It's over $100, and I can tell you the reason she hasn't made it is because Ms. Gerlach moves around a lot. She's a contract nurse, and she had the paperwork on her proving that she lived at the certain address that they had linked up with her other property. She had that. She can't find it for the other piece, and I don't know how hard she's still looking, but as of the date we filed the complaint, that's why we were in the situation we were in. Mr. Hoffman, before you leave this point, can I just confirm one thing? On count one of your complaint, that seeks prospective relief only, right? Declaratory and prospective. That's correct. Okay. That's correct. And it's for a declaration that they have to pay interest, which the legislation addresses. So I come back to my question and a follow-up on what Judge Wood was asking. It sounds like you agree that it is moot to the extent you are asking for a payment of interest. Of interest in the abstract, absolutely. So you might dispute the amount. Correct. But that's a separate case. That was not pled below. That was not argued below. I don't think it was even argued until the reply brief. Correct. It seems like a separate case. We couldn't have done that in the trial court or prior to now. Okay. Thank you. So if I may, I'd like to move on to the retrospective relief, which we claimed or we pled two methods to recover retrospective relief in federal court. One method is a direct claim, and that rises and falls on whether or not the Indiana courts were foreclosed to the relief sought here. We claim it was by Carter or Smythe v. Carter, the Indiana Court of Appeals decision. Can I pause you on that then? Because it seems incorrect to me to say that the Indiana courts are closed just because it's your prediction that if you went to an Indiana court, it would rule against you. We've never heard from the Supreme Court of Indiana on this point. There's been quite a bit of development in the law since these earlier decisions. So I don't see something like Indiana saying that there's no court that has jurisdiction to hear your case or that the doors are somehow closed in Indiana for those kinds of structural reasons. It seems to me it's just your prediction that you're not going to win. And you could actually go all the way through the Indiana courts and take a petition to the Supreme Court, which is what cases like Rooker-Feldman think you should do. So that's correct. We could go to the Indiana state court and roll the dice and see if they'll take it up. The controlling law in Indiana right now is not in question. It is Smythe v. Carter. That is the decision of the Indiana Court of Appeals. In Indiana, there is one unified court of appeals. No, I understand that entirely. That's your prediction that you're going to lose. And the Indiana Court of Appeals, since it is a unified court, undoubtedly has the authority to reexamine its own decisions. We have that authority. Anybody who asks us to rehear a case in bank is invoking that authority. Absolutely, Your Honor. That would also apply, by the way, if the Indiana Supreme Court had decided it. You could make the same argument that we could bring the case in Indiana. And the Indiana Supreme Court would have the power to overrule its prior decision. Exactly. And so the question is, are the courts of Indiana open to you? The only way in which they're not open is because there is precedent that they have the authority to change that stands in your way. That's right, Your Honor. And that's the same reason that this court found that federal court jurisdiction was appropriate in the Colton case, which is identical to this case. In that case, the plaintiffs challenged Illinois' unclaimed property system for the same reason. And in that case, they had controlling Illinois precedent that rejected those claims and said that's not a claim you can make in Illinois. And this court held that federal court jurisdiction was appropriate. Now, they did it without mentioning this language, whether or not the courts were closed or whether or not the claim was filed. Yeah, which is actually somewhat significant to me, yeah. They did it under a Williamson County analysis, but it was fully briefed in that case. There were five pages by the defendants, and the plaintiffs had also briefed the issue directly on this point on the 11th Amendment. The state of Illinois knew about the 11th Amendment challenges, and they challenged it hard. And this court, the panel before that decided Colton and then decided the next case after that. It came back up under another case, Goldberg. In both instances, the court kept the case in federal court. There's no legal difference, relevant difference between the Illinois case in Colton and this case. So, Mr. Heffner, I'm going to spin out a whole series of speculative points. You don't know the answer and I don't know the answer, but I'd love to hear your thought, okay? If the U.S. Supreme Court in DeVillier versus Texas holds that the takings clause is not self-executing, therefore you cannot bring a direct claim like this, okay, they might. I don't know. You could read the tea leaves every bit as well as I can on that. And that you really need to pursue a remedy in state court under state law. And if the state courts are closed, you'd argue it's unconstitutional because the states can't violate the Fifth Amendment, but then not supply a remedy, something like that. A holding like that would put an enormous amount of pressure on, how do you call it, Smythe? Smythe v. Carter. It put an enormous amount of pressure on that, right? And I think so much pressure that it would force Indiana to act, to revisit it. You know, for sure, because the claim couldn't be in federal court that way. So that's just a long way of asking what, if any, relevance to how we proceed does DeVillier have and what thoughts do you have on that? I'm thinking about it vis-à-vis count two because it looks to me like count two is a straight-up claim under the takings clause. It is. It is, Your Honor. And it would apply. I think my first reaction to the way you went through it and the speculation that you're talking about, and it melds into Judge Wood's questions as well, is under whatever test you come up with or whether or not the state court is closed, I don't think it can be based on the court's speculation about what the lower court will do or what the Supreme Court will do in another case. I think with respect to that particular issue, whether or not the state court is closed, which, by the way, it's also called whether or not the plaintiff has a remedy available in the court. And so whether or not that is true has to be judged as of the time the complaint is filed. It has to be judged as of whether of the time the plaintiff is actually taking action to do something. It can't be based on this court or a district court when they're determining it, trying to predict what a state Supreme Court or a court of appeals might do in reversing a case. Because, remember, the Indiana Supreme Court is not bound by this court's determinations. So even though this court has determined that it is unconstitutional for a state to withhold the interest that it earns on unclaimed property, the Indiana Supreme Court is not bound by that. But you would have a remedy at the U.S. Supreme Court level if you thought that the Indiana Supreme Court had adopted an interpretation that conflicts with the U.S. Constitution. That's what 1257 is all about. I wish you would talk a little bit more about what impact, if any, the words are still reverberating in the courtroom practically. And it not only has to do with a stand-alone direct takings claim under the Constitution, but there's also a complicated thing both there and here about how state sovereign immunity intersects with that. There are many, many takings cases that have no impact on state sovereign immunity. The city of Chicago takes property, a park district takes property, a highway authority takes property. Those aren't the state, and so we don't have to worry about the 11th Amendment. But we do have to worry about the 11th Amendment if it's the state itself, which is your allegation about the Indiana provision. And I'm curious whether we are going to gain or whether there's enough of a chance that we might gain insight from de Villiers that we should put this case on hold, wait and see what the de Villiers opinion says. It'll be out probably by June the 30th. That would be the typical time frame, and proceed cautiously. I can't say that's an unreasonable way to proceed. But tell me what you think de Villiers is about. Is it going to answer the state sovereign immunity problem, for example? I think it will. And, I mean, I can make predictions. I've got a strong opinion on my prediction on what the Supreme Court is going to do. Well, I guess to push back, I would say the question that the court addressed was whether the Fifth Amendment provides a cause of action. Now, the court may move into further territory. It's up to them. They, of course, write their opinions as they wish. But that wasn't the direct question presented. And that wasn't the focus of the questioning during oral argument. You're talking about now the oral argument. Did the oral argument before the Supreme Court. Both the question presented and the oral argument. I have not listened to the oral argument at the Supreme Court on that issue. Okay. I know generally about the issue, but I have not listened to the Supreme Court argument. So I can't give you a hint as to what those might be. I've got a minute left. I was going to reserve some time, but I have not touched on. Why don't you go ahead and touch on your point in that time, and I'll give you a minute or two on rebuttal. If I could, please, before we get there. You were relying on Colton earlier and saying it's the precise case. But Colton didn't even touch on the 11th Amendment. You're right. It did not. So I don't know how that helps us because the plaintiff there sued for damages under 1983, which is different than what you have here. The plaintiff also sued under the Fifth Amendment a direct claim. In fact, when it went down, that's what they settled the case on, and they're still administering that case. It went back down. They had an issue on class certification about whether or not plaintiffs who did not earn interest before the money was taken could be paid that. It came back up to this court. This court ruled that it was allowable and sent it back down. Again, it had an opportunity at that time, fully aware of the 11th Amendment, to rule on it. It did not. It retained federal court jurisdiction. The Colton case, I cannot explain why they did not mention the 11th Amendment in the opinion. Our brief does the best job. The only thing I can think of is, as we've explained, this 11th Amendment analysis and the Williamson County analysis are very close. So if you're going to decide whether or not the state court has adequate procedures in order for you to recover under Williamson County, that's really close to does it provide you a remedy. The reason that we've come up with that I think makes the most sense is that the court at that time collapsed the two into the one analysis. I do not know why they didn't say that. I do know that it was fully briefed, and you can find that in the papers. And I do know that the panel could not have ignored the 11th Amendment. So can I move on and just quickly? Why don't you make your final point here in a minute? So the final point is on the personal liability question. Count three. Count three. This court has never held that 1983 does not cover violations of the takings clause caused by a state official. There are courts that mention that that's probably the way it should go, but they usually do that in the context of ruling that qualified immunity applies. The First Circuit is the only court, circuit court, to rule on this issue with a reasoned analysis and proper briefing. And they found correctly, we suggest, that you may bring a 1983 personal liability case against a state official for causing a takings violation. And what's the measure of damages? The measure of damages is probably going to be really close, if not identical to, just compensation as computed under the Fifth Amendment. You might have different interest claims, post-judgment interest claims. Maybe the time period would run differently. You might have, it's theoretical that if you had an individual case, you might have some kind of compensatory damages issues that you could bring. I, quite frankly, have never done that. But that's how you would line them up. You would figure out, the damages would obviously be tied probably nearly 100% to the underlying just compensation calculation. And if you'd gotten just compensation by that time, is it your position you could double recovery? No. You'd have no damages if you had just, unless you got the compensation and it didn't include some kind of interest calculation that the case law had said, under 1983 you could get some extra bomb. So, and besides the First Circuit, every method of interpretation of either the statute or the Constitution backs our claim that you can bring this. Textual, historical, the structure of the Constitution, that no constitutional right in the Bill of Rights should be a second class right. All of these things. We follow it. Why don't we hear from the state and Mr. Heffern, we'll call you back up. Thank you. Okay, you're welcome. Good afternoon, Ms. Holmes. Good afternoon, Your Honor. May it please the Court. Following the enactment of a statute requiring the state to pay interest on non-interest bearing property, Ms. Gerlach's claims for prospective relief on that basis are moot. Sovereign immunity bars her remaining claims for monetary relief. Ms. Gerlach seeks compensation in the form of interest that the state of Indiana gained when it included its property and its fund that earns interest over time. Her claim for damages on that basis, that failure to pay out that interest was a Fifth Amendment taking, without just compensation, necessarily is a claim against the state of Indiana. And the state is not a person for purposes of Section 1983 and enjoys sovereign immunity from suits for monetary relief in federal court. Indiana courts are open to Ms. Gerlach's claim, so this federal form is not. It would help me most if you could spend a minute or two on DeVilliers. Yes, Your Honor. And like opposing counsel, I didn't listen to the oral argument. I apologize. I can't speak specifically to any issues that arose then. My understanding is that DeVilliers presents the issue of whether there is kind of an implied right of action under the Fifth Amendment specifically so that a plaintiff could bring a taking claim in federal court without other cause of action, such as- Well, it's like Bivens and Davis against Passman. Is this a third item on the list? Sure, Your Honor. So to the extent that the court wants to wait to hear the answer, some answer to some question posed in DeVilliers, I'm not sure if that's necessary when we're talking about specifically whether this is a suit actually against the state of Indiana rather than these individuals. But that wouldn't address Count 2. That might address Count 3, the 1983 claim. But Count 2 is against the state. Sure, Your Honor. So Count 2 would require us to take a closer look at the Eleventh Amendment than we've had to, or at least the jurisprudence. Actually, the court says it's not really just Eleventh Amendment. The jurisprudence surrounding the concept of state sovereign immunity, which is why I was asking if DeVilliers wasn't focusing on that, one could imagine a statement about a direct right of action under the Fifth Amendment that addresses many, many takings cases, but that doesn't address whether the Fifth Amendment is an exception somehow under the plan of the convention or under some theory to the state's sovereign immunity. Sure, Your Honor. So I think that the state's position is that state sovereign immunity does bar any claim for monetary relief so long as the Indiana courts are open to hearing the claim. And what's your response to Mr. Heffner on, what is it, Smythe or Smith? And, you know, the courts really, they're really not open, not open as a functional matter. Your Honor, yes, the state disagrees with that argument. I think it's, that would be quite a difficult standard to meet. I think the court has already acknowledged during. So what's the path? Forget this lawsuit. If somebody wants to sue tomorrow, what's the path that they would take in state court? They could sue for a taking. There's an inverse condemnation action that's available under Indiana law, or, you know, they could sue for takings. Those are available under Indiana law. What's the standard to determine openness? So I think it's something much more than likelihood of success. So the standard for an open court should be something more along the lines of there is no cause of action, there's no jurisdiction of the court to hear this case, not necessarily that there is unfavorable precedent for the litigant who would otherwise be going into state court. What's your strongest authority for that? I think. Sorry, it's not coming to mind. I know that the court mentioned this standard in Pavlak v. Holcomb. So I have another question. It's just a technical question about Indiana. Do these inverse condemnation cases or other cases seeking compensation go to a specialized tribunal in Indiana? Do they go to the Indiana Courts of General Jurisdiction? Where do they go? My understanding is that these are claims that could be brought in state court. Just the regular state court of first instance? That's my understanding, Your Honor. Okay. And your position is that, yeah, in that litigation the state might hold up on Smyth v. Carter and say you lose on the merits, but that doesn't mean the court's closed. Yes, Your Honor. And then you could do kind of akin to what Judge Wood, you can then ask the Indiana Supreme Court to hear it, and then ultimately the U.S. Supreme Court if you need to. Yes, that's absolutely our position, Your Honor. And to the extent that there is any concern about the Smyth case, that was decided before a lot of intervening federal precedent on these issues, and there's no indication that Indiana state courts would be closed to considering arguments. An Indiana Court of Appeals panel following Smyth is not bound to consider Smyth, as the court acknowledged. There's no en banc consideration, but a panel could disagree with an earlier decision when confronted with other persuasive authority. So, yes, the fact that this is open, the Indiana courts are open to hear this kind of claim and resolve this issue should mean that the federal forum will be closed because of sovereign immunity. This is a suit against the state of Indiana. There's no question that this interest accrued while in the public fisc. It's not as though the state officials who are named in this lawsuit have pocketed the money. So when considering kind of the circumstances surrounding this interest gained, it's clear that this is a suit against the state of Indiana. Aren't there kind of two funds, though? There's a general fund and there's this other fund that the Indiana attorney general is supposed to segregate and keep enough money to pay anticipated claims? Yes, Your Honor, and that seems there is no difference in that this is all part of the public fisc. There are some different statutes that determine how kind of the money is moved around depending on the amounts that are gained. Things move around, but this is all part of the public fisc. This isn't just going to be something different, and the unclaimed property fund is not invested separately. This is all part of the public fisc, and so this would all be coming from the state of Indiana if this is a claim for interest. What about Mr. Hefner's argument that what he's seeking is perhaps an overlapping cause of action? He's seeking to bring an action directly against, I'm thinking primarily of count three, against this line of attorneys general as people who are Indiana state officials who have violated his client's rights under the Fifth Amendment by refusing to pay her the interest that she's due for this money, and maybe the measure of damages is exactly the same as the amount of the taking, but if she gets those monies, then in some other case, if she tries to keep suing, she'll be met with a defense of accord and satisfaction or something of the sort, and people are allowed to elect their remedies. Oh, sure, Your Honor. So the point is that these are, you know, no matter how this is pled, this is ultimately going to be a request for the interest that the state of Indiana gained and holds. The fact that you've named individual officials and their individual capacities is kind of beside the point. What the court looks to is whether the real party of interest is the state of Indiana, which in this case it seems clear that it is. And the just compensation, I think I'm hearing you say, would be paid either out of this general fund or the payout fund? I think that's reasonable. Not out of the wallet of an attorney, Jim? No, Your Honor. And just briefly on the mootness, if I may, Indiana's statute now is clear that if Ms. Gerlach or any other claimant comes forward and asks for their property back, they're going to receive the interest earned. The Indiana General Assembly has spoken on the issue, so even putting aside that the Attorney General changed the policy in 2022, now it's very clear that it's a legislative enactment and it's not going to change. Mr. Heffner has asked us to vacate the district court's ruling on count one rather than just dismiss this as moot. Is there any reason not to vacate it? I don't see that vacater is appropriate here. The district court did conclude that this was moot at the time, so when the court is reviewing this motion for judgment on the pleadings, it's not really like a typical Munseenware situation where a decision was made on the merits below, and now on appeal it's become mooted, so there would be a prejudice on the merits that maybe the court would choose to kind of even the playing field. This is a mootness decision below. It was on different grounds. Does that matter? It was based upon the policy representation and the affidavit as opposed to legislation. I don't think so, Your Honor. Again, I think that this sort of vacater remedy is typically going to be applied for more of a merits-based prejudice analysis rather than just maybe this court would choose to affirm on different mootness grounds at this point. Can I just confirm one point that I think is clear? The new statute that was passed in 2023 is prospective only to the tune of 100%, 0% retrospective. In other words, you can't rely upon the new act to get kind of backward-looking just compensation. I'm not sure. I don't know exactly what you mean, Your Honor. I think that the state of Indiana has already been paying interest earned on property for claimants. Under the change in policy right that you referred to? Yes. But does the new statute create a right looking backward for when the state was not paying interest? I don't know exactly whether the statute specifically says that or not. I think that's been the way that the Attorney General's Office has been applying the statute, and I didn't understand the claimant to be arguing otherwise in this case. So just to be clear, if you had gotten that $100.93 or whatever it was four years ago, and then along comes the change in policy and along comes the statute, people don't have the right to come back and say, you should have actually given me $101.93 because it's too late for those people. So the people who do submit their claims where the money has been held from a time prior to the change are getting the interest, but not the people who have already been paid? Yes. I think that is accurate, Your Honor. So for claimants going forward, they're receiving the benefit of the statute. So if Mr. Heffner sent you a letter tomorrow morning that said, hey, on my count two in litigation, I'd like you to write me a check out of the general fund to cover me in the past and the litigation will go away, you'd say, no, it's not working that way. I don't know the answer to that, Your Honor. I'm not sure. I'm trying to ask the same question just to make sure that the statute is forward looking only. The statute, not... I'm afraid I don't know the answer, Your Honor. It seems that way reading it, but... Okay. Anything else? No, Your Honor. We ask that you affirm. Okay. Very well. Thank you. Mr. Heffner? So the statute is forward looking. It seems it by its terms, right? I mean, you would have written that letter a long time ago. I would know that. Yeah. I would know that. But she must have asked for her money before even the policy change because I don't think there was anything... They didn't change the policy until we filed suit. Right. And that brings up a point, which is the original statute, the original time this case came up in this court ruled that the unclaimed property fund, the way it was being operated was unconstitutional, was against Indiana and Sarajewski. They didn't go back then and pay anyone back in the past either, and they haven't now, and they're not going to unless a court orders them to. That's just the fact. That's what's going to happen. I think that's relatively easy to see. I'd like to say with respect to the vacator, I think that's required. It's not going to help my client. It's not going to help. Why is it required under the law? Because the decision was wrong and it shouldn't be relied on for precedent. But it's not precedential. It's a district court decision. The only thing it would do would perhaps inform race judicata or claim or issue preclusion, but district court opinions are not precedential. It will be used as persuasive authority. Well, I mean, it would if it's vacated too. You could put a law review article in as persuasive. Okay. I have no response to that. How helpful would it be in light of the change with the legislation? Well, with respect to this suit, it wouldn't have. Even another suit. The legislation has changed. The legislation has changed, yes, but I'm talking about the standard that the district court employed to find that the case was moot. It did not meet the Seventh Circuit standard at all, and I think it's a danger to have the power of the government to come in and say, we fixed it, and they don't provide you a statute or a regulation to back it up. I mean, we asked for just give us a written memo that supports this, and they couldn't produce that. So we thought it was important to remove that from consideration in the future. The last thing I'd just like to point out is, and I know we've had a conversation about Colton and why it did not apply to the 11th Amendment, but the statement, the reasoning in Colton that said that, and we put this forward as the test that this court should adopt to determine whether or not a remedy is available and whether or not a federal court jurisdiction can proceed, is if a case is directly on point that is controlling in the state, regarding a statute that clearly applies to the claim, we have that here, and it existed in Colton, and it forecloses the relief, then it is, quote, pointless for the plaintiff to bring that suit in the state court. That's exactly what we have here. There is a chance, but I can tell you, as a litigator who does civil cases, that I don't think I'd take the risk on it, and I don't know how many people would for this amount of money. That's all I have. Okay. Very well. Mr. Huffner, thank you. Ms. Holmes, thanks to you, and the state will take the appeal under advisement. And that concludes this afternoon's argument.